Filed 10/29/24  P. v. Bartlett CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JAMES LYNN BARTLETT,<br><br>Defendant and Appellant. | F086676<br><br>(Super. Ct. No. 1049429)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Stanislaus County.  Carrie M. Stephens, Judge.

Ross Thomas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Caitlin Franzen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

In 2005, a jury convicted defendant James Lynn Bartlett of conspiracy to commit assault with a deadly weapon (Pen. Code, §§ 182, 245, subd. (a)(1)), false imprisonment

(§ 236), kidnapping (§ 207), two counts of witness intimidation (§ 136.1, subd. (c)(1)), and active participation in a criminal street gang (§ 186.22, subd. (a)). (Undesignated statutory references are to the Penal Code.) In a bifurcated proceeding the court found true a strike allegation, an allegation defendant had a prior serious felony conviction (§ 667, subd. (a)), and two prior prison term allegations (§ 667.5, former subd. (b)). The court sentenced defendant to prison for 33 years 8 months.

After the passage of Senate Bill No. 483 (2021–2022 Reg Sess.) (Senate Bill 483), the court signed, in July 2022, a stipulation between defense counsel and the prosecution that granted the striking of defendant's two prison prior enhancements pursuant to section 1172.75. On March 6, 2023, the court issued an order reopening the section 1172.75 matter. Thereafter, on March 27, 2023, defendant filed a resentencing brief and invitation for the court to strike and/or dismiss enhancements. The court declined to further reduce defendant's sentence or to strike defendant's strike prior, concluding by clear and convincing evidence that granting further relief would endanger public safety.

In this appeal, defendant contends the amendments made to section 186.22 by Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333) should have applied during the section 1172.75 resentencing proceedings necessitating reversal of his gang conviction and, if the issue is deemed forfeited based on a failure to object, his counsel provided ineffective assistance on that basis. Defendant also contends the court erred in failing to stay punishment on either the active gang participation count or the witness intimidation count pursuant to section 654 since the latter was used as a predicate offense to prove the former.

We vacate the court's order following resentencing, reverse defendant's conviction for active participation in a criminal street gang (count XIV; § 186.22, subd. (a)), and remand for further proceedings consistent with this opinion.

# FACTUAL AND PROCEDURAL HISTORY

In 2005, a jury convicted defendant of conspiracy to commit assault with a deadly weapon (§§ 182, 245, subd. (a)(1); count II), false imprisonment (§ 236; count V), kidnapping (§ 207; count VII), two counts of witness intimidation (§ 136.1, subd. (c)(1); counts X & XI), participation in a criminal street gang (§ 186.22, subd. (a); count XIV), and misdemeanor assault (§ 240, a lesser included offense to count IX). In a bifurcated proceeding the court found true allegations defendant had suffered a strike prior conviction (§§ 667, subd. (d), 1192.7, subd. (c)), a prior serious felony conviction (§ 667, subd. (a)), and two prior prison terms (§ 667.5, former subd. (b)).

The court sentenced defendant to prison for 33 years 8 months, which was composed of a middle term of five years on the kidnapping count (§ 207; count VII), doubled to 10 years based on the strike prior, plus five years for the section 667, subdivision (a) prior serious felony conviction enhancement, a consecutive term of three years (the middle term) each for the witness dissuasion counts (counts X & XI), doubled to six years based on the strike prior, one year (one-third the middle term) for the conspiracy to commit assault with a firearm count (count II), doubled to two years based upon the strike prior, eight months (one-third the middle term) for the false imprisonment count (count V), doubled to 16 months based upon the strike prior, eight months (one-third the middle term) for the active gang participation count (count XIV), doubled to 16 months based upon the strike prior, and one year for each of the two prison prior enhancements (§ 667.5, former subd. (b)). All of the terms were ordered to run consecutively.

Defendant through counsel filed a form petition for recall and resentencing pursuant to section 1172.75 dated July 12, 2022, asking the court to dismiss his section 667.5, former subdivision (b) enhancements and to resentence him to a term of 31 years 8 months. The motion further stated defendant waived a resentencing hearing. The form petition also included a section with the People's response in which they agreed to

3.

defendant's request and waived a hearing. On August 2, 2022, an order was filed by the court (dated July 21, 2022), striking defendant's section 667.5, former subdivision (b) enhancements and resentencing him to a term of 31 years 8 months.

On January 27, 2023, defendant, through the public defender, filed a request and declaration of counsel to reopen the case pursuant to section 1172.75 to permit counsel to "file a request for sentence modification including a request to strike the … section 667(a) five year prior." Counsel averred that she submitted a stipulation joined by the People on July 19, 2022, requesting removal of the two section 667.5, former subdivision (b) priors; but she "inadvertently missed that [defendant] also had a … section 667(a) prior which, under [Senate Bill No.] 1393, [the] Court now has discretion to strike." She noted defendant filed a petition for writ of habeas corpus requesting the same relief. Additionally, she explained, defendant "has significant medical issues, which … should be brought to the attention of the court so that the court may determine whether those medical conditions and other aspects of [defendant's] life warrant the exercise of that discretion."

On February 17, 2023, the court issued a written order denying the request to reopen resentencing. It stated, "Section 1172.75 allows for the striking of sentencing enhancements that were imposed under … Section 667.5(b), not … Section 667(a)," and the court already struck the section 667.5, former subdivision (b) enhancements. Accordingly, there were "no grounds to reopen the case pursuant to … Section 1172.75 for the purposes of possibly striking the … Section 667(a) enhancement. Moreover, the Court cannot, at this time, exercise its discretion to strike the … Section 667(a)." It explained, it could not recall the sentence on its own motion pursuant to section 1172.1 because it was "well beyond 120 days after sentencing" and there was not "a recommendation" from the California Department of Corrections and Rehabilitation (CDCR) "or the Board of Parole Hearings to recall and resentence Defendant/Petitioner." The court also denied defendant's petition for a writ of habeas corpus.

4.

Thereafter, defense counsel submitted a calendar request on February 28, 2023, asking that the matter be set for a resentencing hearing. The request noted the court denied the request for a full resentencing hearing, however, defendant "is entitled as a matter of law under … § 1172.75" and the "DA agrees & joins or has no objection to" the case calendar request. The court granted the calendar request and reopened the matter.

Defendant filed a resentencing brief asking the court to strike or dismiss the strike prior allegation and/or the prior serious felony enhancement (§ 667, subd. (a)). He urged the court to consider changes to section 1385 by the enactment of Senate Bill No. 81 (2021–2022 Reg. Sess.) and the recent changes to section 654 that no longer required the longest term of imprisonment to be designated as the base term. In discussing mitigating circumstances, defendant emphasized his "medical condition as evidenced by the … medical records" attached to his brief. He explained he had been diagnosed with hepatitis C and cirrhosis of the liver and, during 2022, he was transferred to an outside medical hospital four times. He stated, in 2016, his liver disease was described as "end stage" and he had also been prescribed nitroglycerin for chest pain. Defendant's sister reported defendant had a difficult childhood and he has a place to live with her in her trailer when he is released.

In their opposition and supplement thereto, the People argued reducing defendant's sentence further would endanger public safety. In support, they discussed the circumstances of the current offense, defendant's disciplinary record while in prison, and defendant's prior offenses, which included convictions for "manslaughter, assault with a deadly weapon and being in possession of a firearm." With regard to defendant's contention that his medical condition is a mitigating circumstance, the People asserted defendant's "condition has not limited his defiance nor has it limited his ability to engage in work or his assignments." They argued defendant "was and remains extremely violent, whether he is on parole or in custody.… [He] has continued his violence, attempts to incite violence, and fails to follow rules and orders while in custody." They

5.

asked the court to deny resentencing based on defendant's conduct. They further argued that defendant's strike prior was not an enhancement but rather resulted in an alternative sentence under the three strikes law; so, Senate Bill No. 81 did not apply or permit him relief from the strike prior. They also argued the court should not strike defendant's prior serious felony enhancement (§ 667, subd. (a)) considering his criminal history, the instant offense, and his conduct in custody. They also asserted resentencing based on the amendments to section 654 was not warranted under the circumstances of the instant crimes. They further objected to defendant's request for reduction of the imposed terms from the middle terms to the lower terms and reduction of the full consecutive term for the section 136, subdivision (c)(1) violations. The People submitted numerous exhibits to their opposition to defendant's request for resentencing, which included the opinion from defendant's direct appeal and evidence of numerous rules violations/"counselings" defendant had received while incarcerated.

The court held a resentencing hearing on August 1, 2023. Defense counsel argued the court had an obligation to resentence defendant under both section 1170.126 and section 1172.75 and the "primary ask" is for the court "to consider striking his five-year 667(a) enhancement." She argued defendant's "violence at CDCR is limited to rules violations for three occasions in the mid 2010s." He is "now 59 years old" and "has statistically aged out of what we consider to be somebody likely to re-offend." She asserted defendant has "been at CDCR since 2007, and is in failing health; he has end-stage liver disease." She noted, with regard to the fact defendant is a "violent offender," if the court were to strike the five-year prior serious felony enhancement, defendant "would not go home," he would appear before the parole board who would make a determination as to whether he posed a risk to the community if released. Accordingly, she asked the court to further reduce the sentence by five years to an aggregate imprisonment term of 26 years 8 months.

6.

The People responded defendant is still a public safety concern "despite his condition," and "he continues to be disobeying orders while in prison as recent as 2022." They characterized his prior offenses as "extreme," asserting defendant "killed a 68-year-old man" and "committed assault with a deadly weapon" prior to this offense. And he "engaged in gang conduct" while in prison. They argued defendant was "an extreme danger to society."

The court detailed the amended laws that applied at resentencing including section 1385 as amended by Senate Bill No. 81 and amended section 654. It noted defendant's "conduct was serious" and the "offense rendered one victim a quadriplegic." Defendant "was a member of a white supremacist gang." Additionally, his "prior criminal history is … significant" and includes a 1986 voluntary manslaughter conviction of a 68-year-old man. Defendant served a three-year sentence, was placed on parole, and then violated parole. Then, in 1992 defendant was convicted of misdemeanor theft. In 1994, he was convicted of misdemeanor possession of hypodermic needles, assault with a deadly weapon, and being a felon in possession of a firearm; he was sentenced to over nine years in prison. "He was returned to prison three times for violations of parole in 2001 and 2003" and committed the instant offenses in 2002. He "has performed poorly at CDCR." He received numerous rules violations, including for drug and alcohol use, fighting with other inmates, and exhibiting threatening behavior and disobedience to custodial officers, and he received numerous negative "counselings." The court concluded, "None of the mitigating factors listed in … Section 1385 (c)(3) A through I apply here." It noted there was only one enhancement that did not increase punishment to over 20 years when applied. The court acknowledged the programming defendant did in 2021, but asserted "[i]t does not appear he did programming for the first 14 years of his incarceration," and he received a counseling after his completion of life skills classes. The court found "[b]y clear and convincing evidence" that "granting relief will endanger public safety," reasoning:

7.

"[Defendant] had a lengthy history of committing serious and some violent offenses prior to the offense in question. When released on supervision, he did poorly and re-offended a short time later. He had done very poorly in custody as well; and engaged in violent conduct; and continued holding white supremacist views until at least 2018. He's engaged in minimal life [skills] programming; all in 2021 and nothing before that I know of. He violated custodial rules despite his course work. He continued to use drugs and alcohol despite his diagnosed liver disease. [Defendant] has an extensive criminal history of serious felony offenses that date back many years. He's served time in prison twice before and did poorly on supervised release. The offenses became gradually more serious as criminal history was mounting. His medical condition, that one day may be more serious, does not seem to interfere with his oppositional behavior and otherwise negative conduct in prison. [¶] [Defendant]'s conduct continues to cause the Court to conclude the midterm sentencing option and the base term for kidnapping offense, which carries the longest possible prison sentence, is appropriate."

The court stated "there's a lot of flux with regard to Romero motions," but it was considering the legal possibility of such a motion. It concluded, "After having considered all the appropriate factors, for the same reasons articulated above, the Court does not find that the defendant is deemed outside the spirit of the three strikes law in whole or in part." Accordingly, the court denied defendant's request to resentence him further.

## DISCUSSION

Defendant argues Assembly Bill 333's amendments to section 186.22 should have applied during the section 1172.75 resentencing and his active gang participation conviction should have been reversed as a result. He also contends the court erred in imposing punishment on both the active gang participation count and the witness dissuasion count in violation of section 654.

Because we conclude defendant's first contention has merit such that the court's resentencing order must be vacated and reversal of defendant's active gang participation is required, it is unnecessary to address defendant's second contention.

8.

## I. Resentencing Proceedings Under Section 1172.75

In October of 2021, the Governor signed Senate Bill 483 (Senate Bill 483), effective on January 1, 2022, which added section 1171.1 to the Penal Code, subsequently renumbered as section 1172.75. This section declares: "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense … is legally invalid." (§ 1172.75, subd. (a).)

Section 1172.75 establishes a mechanism to provide affected defendants an avenue for relief from now invalid prison prior enhancements. Subdivision (b) directs the Secretary of the CDCR and the correctional administrator of each county to "identify those persons in their custody currently serving a term for a judgment" that includes a now legally invalid prison prior enhancement. (§ 1172.75, subd. (b).) After the trial court receives from the CDCR and county correctional administrator the information included in subdivision (b) of section 1172.75, "the court shall review the judgment and verify that the current judgment includes a sentencing enhancement described in subdivision (a)," and if so, "recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).)

When resentencing a defendant under section 1172.75, the court must "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).) "The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subd. (d)(3).)

9.

## II.    Applicable Law

### A.    Assembly Bill 333

"In 1988, the Legislature enacted the California Street Terrorism Enforcement and Prevention Act (STEP Act or Act; … § 186.20 et seq.) to eradicate 'criminal activity by street gangs.'" (*People v. Valencia* (2021) 11 Cal.5th 818, 828; accord, *People v. Tran* (2022) 13 Cal.5th 1169, 1205 (*Tran*).)  Among other things, the STEP Act created "a substantive offense of active participation 'in any criminal street gang' (… § 186.22, subd. (a))." (*Valencia*, *supra*, at p. 829.)  However, in 2021, the Legislature made changes to the criminal street gang laws when it passed Assembly Bill 333, which became effective on January 1, 2022 (see Stats. 2021, ch. 699).  The California Supreme Court in *Tran* summarized these changes as follows:

> "Assembly Bill 333 … narrowed the definition of a 'criminal street gang' to require that any gang be an 'ongoing, *organized* association or group of three or more persons.'  (§ 186.22, subd. (f), italics added.)  Second, whereas section 186.22, former subdivision (f) required only that a gang's members 'individually *or* collectively engage in' a pattern of criminal activity in order to constitute a 'criminal street gang,' Assembly Bill 333 requires that any such pattern have been '*collectively* engage[d] in' by members of the gang.  (§ 186.22, subd. (f), italics added.)  Third, Assembly Bill 333 also narrowed the definition of a 'pattern of criminal activity' by requiring that (1) the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang 'members,' as opposed to just 'persons'; (3) the offenses commonly benefitted a criminal street gang; and (4) the offenses establishing a pattern of gang activity must be ones other than the currently charged offense.  (§ 186.22, subd. (e)(1), (2).)  Fourth, Assembly Bill 333 narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any 'common benefit' be 'more than reputational.'  (§ 186.22, subd. (g).)  [¶] Finally, Assembly Bill 333 added section 1109, which requires, if requested by the defendant, a gang enhancement charge to be tried separately from all other counts that do not otherwise require gang evidence as an element of the crime.  If the proceedings are bifurcated, the truth of the gang enhancement may be determined only after a trier of fact finds the defendant guilty of the underlying offense." (*Tran*, *supra*, 13 Cal.5th at p. 1206.)

10.

Section 186.22, subdivision (g) notes, "Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness informant." And our high court has explained "collective engagement requires a nexus between the individual predicate offenses and the gang as an organized, collective enterprise. This organizational nexus requirement is satisfied by showing a connection between the predicate offense and the organizational structure, primary activities, or common goals and principles of the gang." (*People v. Clark* (2024) 15 Cal.5th 743, 749.)

**B.     Retroactivity**

Under the presumption articulated in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), where an "amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed" if the amended statute takes effect before the judgment of conviction becomes final. (*Id.* at p. 748; see *id.* at p. 744.) "The rule in *Estrada* has been applied to statutes governing penalty enhancements, as well as to statutes governing substantive offenses." (*People v. Nasalga* (1996) 12 Cal.4th 784, 792.) "'[A] judgment becomes final "'where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari ha[s] elapsed.'"'" (*People v. Wilson* (2023) 14 Cal.5th 839, 870; see *People v. Padilla* (2022) 13 Cal.5th 152, 162.)

In *Tran*, the California Supreme Court held that the amendments made to the elements of a section 186.22 gang enhancement and substantive gang offense applied retroactively pursuant to the rule of *Estrada*. (*Tran*, *supra*, 13 Cal.5th at p. 1206.) *Tran* reiterated that *Estrada* stands for the proposition that, absent a contrary indication of legislative intent, legislation that ameliorates punishment applies to all cases that are not yet final as of the legislation's effective date. (*Tran*, at pp. 1206–1207.) The *Tran* court

11.

explained, the *Estrada* presumption of retroactivity applies to Assembly Bill 333, which "'essentially adds new elements to the substantive offense and enhancements in section 186.22,'" and has the effect of increasing the threshold for conviction of the section 182.22 offense and the imposition of the enhancement with obvious benefit to affected defendants. (*Tran*, at p. 1207; see *People v. Burgos* (2024) 16 Cal.5th 1, 28 ["*Estrada*'s inference of retroactivity applies to the punishment-mitigating changes to section 186.22"].)

## III.   Analysis

### A.      Assembly Bill 333 Should Apply at Resentencing

Defendant argues that the recall and resentencing under section 1172.75 rendered the judgment in his case nonfinal and, accordingly, Assembly Bill 333 should have applied at resentencing, requiring reversal of his section 186.22, subdivision (a) active participation in a criminal street gang conviction. He concedes there is no published authority addressing whether a section 1172.75 resentencing renders a gang offense nonfinal for purpose of the retroactive application of Assembly Bill 333's amendments to section 186.22. However, he contends there is "authority holding that these amendments apply in the context of other recall and resentencing proceedings," citing, in part, *People v. Salgado* (2022) 82 Cal.App.5th 376, 380, which held that Assembly Bill 333 applied during a recall and resentencing hearing conducted pursuant to former section 1170, subdivision (d), now section 1172.1. Relatedly, he argues his counsel was ineffective in failing to argue at the March 27, 2023, section 1172.75 resentencing hearing that his section 186.22, subdivision (a) conviction was invalid under the amended law because it was necessarily based on the current witness dissuading counts. The People respond that Assembly Bill 333's changes to section 186.22 do not apply retroactively to final judgments and they contend defendant's judgment of conviction became final in 2008, after remittitur issued in his direct appeal. They assert the August 1, 2023, resentencing

12.

"did not render the court's findings underlying [defendant's] conviction for participating in a criminal street gang nonfinal." They argue *People v. Padilla*, *supra*, 13 Cal.5th 152 does not support defendant's position but instead supports theirs.

First, defendant acknowledges his counsel failed to raise Assembly Bill 333 below and asserts, if the issue is deemed forfeited, he received ineffective assistance of counsel. (See *Strickland v. Washington* (1984) 466 U.S. 668, 686–688.) The People do not argue defendant's claim is forfeited on appeal, but instead argue trial counsel was not ineffective because the claim is meritless, and thus it would have been futile for trial counsel to have made it below. Despite counsel's failure to raise the issue below, we exercise our discretion to address the merits of defendant's argument on appeal. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 ["An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party. [Citations.] Indeed, it has the authority to do so"].) Our exercise of discretion is appropriate and in the interests of justice because the law is unsettled such that we cannot fault defense counsel for failing to raise it below. By the same token, it would be unfair to deny defendant the potential benefits of a merits review of this unsettled issue on forfeiture principles. In addition, as discussed below, we agree with defendant that Assembly Bill 333 should have applied at resentencing.

In *People v. Padilla*, *supra*, 13 Cal.5th 152, the California Supreme Court held, when a sentence is vacated as a result of a collateral attack by way of habeas corpus, Proposition 57 (the Public Safety and Rehabilitation Act of 2016)—which "amended the law governing the punishment of juvenile offenses in adult criminal court by requiring hearings to determine whether the offenses should instead be heard in juvenile court"— should apply at resentencing. (*Padilla*, *supra*, at pp. 158, 168.) In reaching this conclusion, the high court relied on *Estrada*, which held that laws that mitigate punishment are presumed to apply retroactively to nonfinal cases. (*Padilla*, at pp. 160– 161.) The *Padilla* court acknowledged "the range of judgments affected by *Estrada* is

13.

delimited by constitutional constraints." (*Id.* at p. 160.) Specifically, separation of powers principles restrict the Legislature's ability to intervene in judicial decisionmaking once a judgment becomes final. (*Id.* at p. 161.) But it held these concerns are not implicated when legislation is applied retroactively to nonfinal judgments. (*Ibid.*) The *Padilla* court explained, "When a habeas corpus court vacates a prior judgment and orders a new trial or new sentencing hearing, the prior judgment—now ineffective—can no longer be a final one." (*Id.* at p. 164.) Said differently, "once a court has determined that a defendant is entitled to resentencing, the result is vacatur of the original sentence, whereupon the trial court may impose any appropriate sentence," and an appeal from such resentencing "is part of direct review of a nonfinal judgment, not collateral review of a final judgment." (*Id.* at p. 163.) And, "[w]hen a defendant's sentence has been vacated, the parties' interest in repose and finality are necessarily diminished; at that point, the countervailing interest in effectuating current legislative policy decisions may appropriately control." (13 Cal.5th at p. 168.)

Here, because of the section 1172.75 proceedings, defendant's original sentence was vacated. In turn, the recall and resentencing pursuant to section 1172.75 necessarily rendered the judgment in this case nonfinal under *Padilla.* (See *Padilla, supra,* 13 Cal.5th at p. 161 [agreeing vacatur of the defendant's sentence "made the judgment in his case nonfinal"].) And, as discussed earlier, our high court has already held that Assembly Bill 333's amendments to section 186.22 apply to nonfinal judgments. (See *Tran, supra,* 13 Cal.5th at pp. 1206–1207; accord, *People v. Burgos, supra,* 16 Cal.5th at p. 28 ["*Estrada*'s inference of retroactivity applies to the punishment-mitigating changes to section 186.22"].) Accordingly, Assembly Bill 333's amendments to section 186.22 should have applied at resentencing.

"This reading of *Estrada* is consistent with the 'consideration of paramount importance' … identified in that decision: the 'inevitable inference' that the Legislature, having 'determined that its former penalty was too severe,' 'must have intended' that the

14.

ameliorative statutory change 'should apply to every case to which it constitutionally could apply.' (*Estrada*, *supra*, 63 Cal.2d at pp. 744–745.)" (*People v. McKenzie* (2020) 9 Cal.5th 40, 48.) Indeed, here, the People offer no basis for concluding the revisions to section 186.22 may not "'be applied constitutionally'" to defendant. (*McKenzie*, at p. 48; see generally *People v. Rossi* (1976) 18 Cal.3d 295, 303 ["Although the Legislature retains the constitutional authority to preserve criminal sanctions for acts committed prior to repeal, we can find nothing in the amending legislation to suggest that the Legislature intended such a result here"]; accord, *People v. Padilla*, *supra*, 13 Cal.5th at p. 169 ["Relying on legislative silence to infer an intent to limit the retroactive application of ameliorative laws would invert *Estrada*'s basic principle that we presume from legislative silence an intent to apply new laws as broadly as constitutional boundaries permit"].) Rather, the People assert that application of the legislation here would undermine "the public interest in the finality of judgments." But the California Supreme Court has rejected similar arguments in both *McKenzie* and *Estrada*. (See *McKenzie*, *supra*, at p. 49; *Estrada*, *supra*, at p. 742; accord, *Padilla*, *supra*, at p. 168.)

The People attempt to avoid our conclusion that Assembly Bill 333's amendments to section 186.22 should apply during the section 1172.75 resentencing after the original sentence is vacated by asserting only the judgment with regard to defendant's sentence was rendered nonfinal by the resentencing proceedings, not the judgment with regard to defendant's convictions. In support, they rely on the *Padilla* court's statement that, in allowing retroactive relief pursuant to Proposition 57 at resentencing "does not allow Padilla to raise claims unrelated to his sentence.… Whatever potential that [a juvenile transfer] hearing may have for reducing his punishment (the nonfinal part of his judgment), it does not authorize or constitute relitigation of guilt." (*Padilla*, *supra*, 13 Cal.5th at pp. 169–170.) They contend the high court was implicitly acknowledging the guilt portion of defendant's judgment was final, whereas the punishment portion of his

15.

judgment was not. They contend this conclusion also follows from *People v. Wilson*, *supra*, 14 Cal.5th 839. We disagree.

Initially, the California Supreme Court has held, "In criminal actions, the terms 'judgment' and '"sentence"' are generally considered 'synonymous' [citation], and there is no 'judgment of conviction' without a sentence [citation]." (*People v. McKenzie*, *supra*, 9 Cal.5th at p. 46.) And "an amendatory statute applies in '"any [criminal] *proceeding* [that], at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it."' (Italics added.)" (*Ibid.*) Here, as in *McKenzie*, "[i]t cannot be said that this criminal prosecution or proceeding concluded before the ameliorative legislation took effect." (*Ibid.*) Said differently, because here the section 1172.75 proceedings resulted in vacatur of defendant's sentence, the criminal proceeding in this matter has not yet concluded so the "amendatory statute applies." (9 Cal.5th at p. 46.)

Notably, no published case has considered whether the court's authority during a section 1172.75 recall and resentencing permits it to reverse the jury's findings as to a substantive gang conviction or gang enhancements pursuant to Assembly Bill 333's changes to section 186.22. However, courts are currently split as to whether a defendant may obtain the benefit of the change in the law under Assembly Bill 333 during resentencing in other related contexts.

In *People v. Trent* (2023) 96 Cal.App.5th 33, review granted December 20, 2023, S282644, the Third District Court of Appeal held that, following the vacatur of a murder conviction based on changes to the felony-murder statute pursuant to section 1172.6, the defendant's conviction for gang membership became nonfinal and he was entitled to retroactive application of Assembly Bill 333, requiring reversal of his section 186.22 conviction. (*Trent*, at pp. 37, 43–44.)

In *People v. Lopez* (2023) 93 Cal.App.5th 1110, review granted November 15, 2023, S281488, the Fourth District Court of Appeal, Division Two, held, on remand for

resentencing, the judgment against the defendant was no longer final, so he was entitled to the ameliorative benefits of Assembly Bill 333. (*Lopez*, at pp. 1113–1114, 1119–1120.) The *Lopez* court held, however, because only the sentence was reversed and the matter was remanded with directions to resentence the defendant, the trial court did not have jurisdiction to reconsider the gang enhancement. (*Ibid.*) Specifically, *Lopez* held, "We *accept* that on remand, defendant was fully entitled to the ameliorative benefits of Assembly Bill 333. However, those benefits consisted of the redefinition of a gang enhancement, *which was irrelevant to anything the trial court had jurisdiction to do*." (*Id*. at p. 1119.) The *Lopez* court noted the passage in *Padilla*, cited by the People here, in which it stated it was not authorizing the relitigation of guilt, was "key to deciding" the case. (*Lopez*, at p. 1118.)

Our court expressly disagreed with *Lopez* in *People v. Mitchell* (2023) 97 Cal.App.5th 1127, 1141–1143, review granted February 21, 2024, S283474. The *Mitchell* court concluded, upon vacatur of the defendant's sentence and remand for resentencing on appeal, he was entitled to the benefit of Assembly Bill 333 at resentencing. (*Id*. at p. 1140.) The *Mitchell* court reasoned, "because this matter is still pending before us, it cannot be said that this criminal prosecution or proceeding concluded before the ameliorative legislation took effect. Accordingly appellant's judgment is not yet final, and we must presume the Legislature intended for this ameliorative enactment to apply as broadly as is constitutionally permissible." (*Mitchell*, at p. 1130.) The *Mitchell* court rejected the argument the People make here, that part of the defendant's judgment, relating to the defendant's guilt, became final long before the resentencing proceedings. (See *id.* at pp. 1138–1139.) Rather, relying on *McKenzie*, the *Mitchell* court concluded, "The cutoff point for application of ameliorative amendments is the date when the entire case or prosecution is reduced to final judgment." (*Mitchell*, at p. 1139.)

17.

Like in *Mitchell*, we do not read *Padilla* "as creating bifurcated judgments in the manner respondent now advocates." (*People v. Mitchell*, *supra*, 97 Cal.App.5th at p. 1140.) Rather, as discussed, we conclude the *Estrada* presumption requires Assembly Bill 333 to apply at resentencing because the criminal proceeding has not yet concluded and the case has not been reduced to a final judgment due to the recall and resentencing. Also, contrary to the People's contention, the California Supreme Court's recent case, *People v. Wilson*, *supra*, 14 Cal.5th 839, does not affect our conclusion.

In *Wilson*, the defendant was found guilty of murder and sentenced to death, and the guilt judgment was affirmed in his automatic appeal. (*People v. Wilson*, *supra*, 14 Cal.5th at p. 870.) The sentence later was reversed and, following retrial, the defendant again was sentenced to death. (*Id.* at p. 844.) On appeal from the second penalty phase verdict, the defendant argued section 1172.6, subdivision (g) permitted him to seek retroactive relief pursuant to Senate Bill No. 1437 on appeal, rather than through the petition process specified in section 1172.6, subdivision (a). (*Wilson*, at p. 870.) Section 1172.6, subdivision (g) permits a defendant "whose *conviction is not final*" to challenge on appeal the validity of "*that conviction*." (§ 1172.6, subd. (g), italics added.) The *Wilson* court noted the applicability of section 1172.6, subdivision (g) was "complicated … by the case's procedural posture." (*Wilson*, at p. 870.) "[W]hen a penalty phase judgment alone is reversed, 'the original judgment on the issue of guilt remains final during the retrial of the penalty issue and during all appellate proceedings reviewing the trial court's decision on that issue.'" (*Id.* at pp. 870–871.) Accordingly, the "defendant's murder conviction [in *Wilson*] would appear to have become final no later than 2009, when the time expired for seeking certiorari in the United States Supreme Court [following our Supreme Court's affirmance of the conviction]." (*Id.* at p. 870.) The high court suggested its earlier "affirmance of the guilt judgment rendered [the] defendant's murder conviction final" for purposes of section 1172.6, subdivision (g). (*Wilson*, at p. 871.) However, the *Wilson* court ultimately did not decide whether the defendant's

18.

murder conviction remained final.  (*Ibid*.)  Rather, because the Attorney General had not disputed that the defendant could challenge his conviction pursuant to section 1172.6, subdivision (g) on appeal from his second penalty phase verdict, the court addressed the defendant's conviction under that statute and concluded "any error brought about by retroactive application of Senate Bill [No.] 1437 is harmless beyond a reasonable doubt." (*Wilson*, *supra*, 14 Cal.5th at p. 868.)

Accordingly, *Wilson* considered the express statutory retroactivity provision contained in section 1172.6, subdivision (g), which permits an appellant to challenge a murder conviction on appeal if the "conviction is not final."  (§ 1172.6, subd. (g).)  The parties did not dispute that the statute applied retroactively and, ultimately, *Wilson* did not decide the issue.  (See *People v. Wilson*, *supra*, 14 Cal.5th at p. 875 ["Assuming defendant's section 1172.6, subdivision (g) claim is properly before us in this appeal from a penalty retrial, any retroactive error from Senate Bill [No.] 1437's ameliorative changes is harmless beyond a reasonable doubt"]; see also *People v. Baker* (2021) 10 Cal.5th 1044, 1109 ["'"'cases are not authority for propositions not considered'"'"].) *Wilson* did not consider the *Estrada* retroactivity presumption, which requires a nonfinal judgment.  On the other hand, *Padilla* held that vacatur of a sentence renders a judgment nonfinal.  (*People v. Padilla*, *supra*, 13 Cal.5th at p. 158.)  Furthermore, *McKenzie* holds that the "'judgment of conviction'" includes both the conviction and the sentence. (*People v. McKenzie*, *supra*, 9 Cal.5th at p. 46.)

The People, however, also assert the proposed limitation on resentencing is supported by limitations on resentencing in an analogous context—pursuant to former section 1170, subdivision (d)(1) (now § 1172.1)— and would promote "uniformity when resentencing a defendant."  Specifically citing *People v. Espinosa* (2014) 229 Cal.App.4th 1487 and *People v. Blount* (2009) 175 Cal.App.4th 992, the People contend that "when a trial court regains jurisdiction to resentence under former section 1170, subdivision (d)(1), its power is limited; it does not also regain jurisdiction to modify a

different part of the judgment."  However, the People's reliance on *Espinosa* and *Blount* is misplaced.  These cases discuss limitations on the trial court's authority to modify a judgment in circumstances that are not present here.

In *Espinosa*, after the defendant was convicted, sentenced, and filed a notice of appeal, the defendant filed a motion to reduce his first degree murder conviction to voluntary manslaughter on the ground the sentence constituted cruel and unusual punishment.  (*People v. Espinosa*, *supra*, 229 Cal.App.4th at pp. 1493–1494.)  The court held a restitution and resentencing hearing at which it stated it retained jurisdiction to resentence the defendant within 120 days of the verdict pursuant to former section 1170, subdivision (d), and the court invited the defense to bring the motion to reduce sentence.  (*Espinosa*, at p. 1494.)  The court then reduced the defendant's conviction for first degree murder to second degree murder and resentenced the defendant to a term of 16 years to life.  (*Id*. at p. 1495.)  On appeal, the *Espinosa* court held the court lacked jurisdiction to modify the jury's verdict by reducing the offense to second degree murder.  (*Id*. at p. 1497.)  It explained, "[a]fter a defendant has filed a notice of appeal, under [former] section 1170, subdivision (d), a trial court has jurisdiction to modify a defendant's sentence, but not the jury's verdict."  (*Id*. at pp. 1497–1498.)  Accordingly, the trial court's action reducing the defendant's conviction to second degree murder after an appeal was filed was declared "null and void."  (*Id*. at pp. 1498, 1500.)

In *People v. Blount*, *supra*, 175 Cal.App.4th 992, the court affirmed the trial court's conclusion it could not impose a sentence other than the 12-year stipulated term agreed to by the parties after the defendant moved to recall her sentence.  (*Id*. at p. 995.)  In moving to recall her sentence, the defendant indicated to the trial court that she did not wish to withdraw her plea, but she requested she be sentenced to a lesser term under the existing plea agreement.  (*Id*. at p. 996.)  However, the trial court agreed with the prosecution that it was bound by the terms of the plea and could not impose a sentence lower than the stipulated 12-year term.  (*Ibid*.)  The appellate court noted the fact that the

20.

defendant "invoked the trial court's authority to resentence her under [former] section 1170 had no effect on the court's discretion to diverge from the stipulated sentence." (*Id.* at p. 998.)

*Espinosa* and *Blount* have no import where, as here, the circumstances potentially limiting the court's authority in those cases—a pending appeal or plea agreement—are not present. Moreover, at least one court has held Assembly Bill 333's amendments to section 186.22 apply during a former section 1170, subdivision (d) (now § 1172.1) resentencing. (See *People v. Salgado*, *supra*, 82 Cal.App.5th at p. 381.)

As discussed, here, the court recalled defendant's sentence, resulting in its vacatur, and then resentenced him pursuant to section 1172.75. The express language of section 1172.75 required the resentencing court to "apply any other changes in law that reduce sentences … so as to eliminate disparity of sentences and to promote uniformity of sentencing," which included Assembly Bill 333's amendments to section 186.22. (§ 1172.75, subd. (d)(2).)

Accordingly, and for the reasons stated, we conclude Assembly Bill 333 should have applied during the section 1172.75 sentencing.

## B. Defendant's Substantive Gang Conviction Must be Reversed

Defendant contends the evidence was insufficient to support his substantive gang conviction considering Assembly Bill 333's amendments to section 186.22. He asserts, during closing argument the prosecutor advised the jury that if it found defendant guilty of the two counts of witness intimidation, it could use them as the required predicate offenses necessary to a finding of guilt as to the active gang participation charge, and the jury convicted defendant of all three charges.[1] Defendant notes his codefendant

---

[1]Defendant filed an application to augment the record with the clerk's and reporter's transcripts from his direct appeal, *People v. Bartlett* (May 28, 2008, F052238). Our court construed defendant's application as a request for judicial notice of the record in case No. F052238 and granted the request, agreeing to take judicial notice of the record on appeal in that case.

21.

stipulated to three predicate offenses, including a 1998 unlawful driving or taking of a motor vehicle conviction and two 1999 convictions that fall within the scope of section 186.22, subdivision (e). He argues, however, in light of the prosecutor's closing argument directing the jury to use defendant's current witness intimidation convictions as predicate offenses during its consideration of defendant's guilt as to the section 186.22, subdivision (a) charge, his codefendant's stipulation was not a factor in the jury's determination of the active gang participation count. The People do not respond to defendant's contentions.

At trial, the prosecution's gang expert opined that defendant was an active participant in a criminal street gang and codefendant Gregory Norsworthy was "just an associate." The prosecution also introduced evidence at trial of prior convictions Norsworthy had suffered, including a January 26, 1998, conviction for auto theft (Veh. Code, § 10851) and a stipulation that Norsworthy suffered two "186.22(e) convictions" on June 17, 1999. The jury was instructed in part:

> "Every person had [*sic*] actively participates in any criminal street gang with knowledge that the members are engaging in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists any felonious criminal conduct by members of that gang, is guilty of a violation of Penal Code Section 186.22(a), a crime.

> "A pattern of criminal gang activity means the commission of or attempted commission of or conviction of two or more of the following crimes, namely, auto theft, witness intimidation, attempted murder, assault with a firearm, and burglary, provided at least one of those crimes occurred after September 26th, 1988, and the last of those crimes occurred within three years after a prior offense, and the crimes are committed on separate occasions or by two or more persons."

During closing argument, the prosecutor asserted "the Penal Code … lists approximately 20 crimes that the state legislators say the prosecutor must prove in order to establish a gang." He argued, "[w]itness intimidation is one of them" and "[y]ou heard ample evidence of witness intimidation perpetrated by [defendant]." The prosecutor also

22.

asserted, "[y]ou have a predicate act of Mr. Norsworthy, his auto theft." The prosecutor continued:

> "Every offense in the charging language that is 186.22(e) that you heard testimony of, burglary, witness intimidation, attempted murder. Basically the conduct in this case of what you know right now establishes a street gang. All the evidence you heard—three or more members, common sign, primary activities, pattern of criminal gang activity—this is a street gang. These are street gang members, proven by their conduct in this case and everything else you heard."

The prosecutor asserted, "this case involves gang teamwork, partners in crime…. This is a gang that took extraordinary steps to silence the witnesses, to cover up the shooting of Bruce Qualls."

Thus, as defendant argues, it appears the prosecution relied upon and argued the current offenses could be used as predicate offenses in establishing a pattern of gang activity, which is no longer appropriate under section 186.22 as amended by Assembly Bill 333. (See generally *People v. Lamb* (2024) 16 Cal.5th 400, 454 [concluding jury instruction that did not incorporate Assem. Bill 333's amendments to the elements of the gang count and enhancements was not harmless where "[t]he jurors were … 'permitted to consider the current offenses in determining whether the prosecution had proven a pattern of criminal gang activity'"].) The prosecution also offered Norsworthy's prior offenses for a violation of Vehicle Code 10851 and two Penal Code section 186.22, subdivision (e) offenses as predicate offenses to establish a pattern of gang activity. However, there was no evidence introduced that these alleged predicate offenses benefitted the gang and that the common benefit was more than reputational as required under amended section 186.22. (See *People v. Lamb supra*, at p. 451 ["Here, other than general testimony concerning how gang members could benefit the gang through criminal acts, there was no other evidence 'about how the specific predicate offense actually benefited the gang'"]; *id.* at p. 453 ["Although a rational juror may well infer that at least two of the predicate offenses were committed for a common benefit that was more than reputational, there is a

23.

lack of evidence as to how the specific predicate offenses at issue actually commonly benefited the gang to preclude the opposite conclusion"]; accord, *People v. Cooper* (2023) 14 Cal.5th 735, 743–744.)  "[T]he absence of evidence concerning the circumstances of the predicate offenses and the actual common benefit to the gang suggests a rational juror could have found the omitted requirements to be unsupported." (*People v. Lamb*, *supra*, at p. 455.)

Accordingly, because the People do not argue, nor can we conclude, that the prosecution presented evidence that would meet the new evidentiary requirements of section 186.22, defendant's conviction for active participation in a criminal street gang must be reversed.

## C.  Defendant's Remaining Claim Is Moot

Defendant also contends "[i]n light of the fact the two dissuading of a witness convictions were used as predicate offenses to find [defendant] guilty of the active gang participation charge, the sentence violated section 654['s] prohibition against double punishment."  He asserts, "[i]n the case at hand, [he] is being punished for both the dissuading of a witness and active gang participation," but "[s]ince the dissuading of a witness transformed [his] gang membership into a violation of section 186.22, [his] imprisonment violates section 654."  Defendant relies upon *People v. Mesa* (2012) 54 Cal.4th 191 in support of his argument.

The People respond that defendant is "partially correct."  They contend the conspiracy to commit assault with a firearm charge was the only felonious criminal conduct that could be used to prove the substantive gang offense.  They note defendant was the only defendant charged and convicted of dissuading a witness, whereas defendant and his codefendant were both convicted of the conspiracy charge.  So, they respond the court erred in imposing consecutive sentences on the conspiracy and

substantive gang counts.  Rather, they contend one should have been stayed, and the matter should be remanded for the court to stay one of the sentences.

Here, because we are reversing defendant's conviction for active gang participation (count XIV) and the related punishment for that count, defendant's contention is moot.  Should the People elect to retry defendant on count XIV and defendant is again convicted of this charge, the sentencing court may consider the section 654 issue during resentencing.

## DISPOSITION

The court's order from the August 1, 2023, resentencing hearing is vacated and defendant's gang conviction (§ 186.22, subd. (a)) in count XIV is reversed.  The matter is remanded for further proceedings consistent with this opinion.  The prosecution shall have the opportunity to retry the gang charge in count XIV (§ 186.22, subd. (a)).

PEÑA, Acting P. J.

WE CONCUR:


MEEHAN, J.


DE SANTOS, J.

25.